## Ames *vs.* Belden.

17 513
135a 578

Contracts of bailment, when it is sought to enlarge the liability of the bailee, should not be expounded unfavorably to the bailee, beyond the obvious scope of the terms of the agreement. Therefore, a covenant to *insure* should never be implied; a covenant of that nature not appertaining to contracts of bailment.

By a clause in a charter party, binding the charterer to return the boats at a given period, " *in as good condition as they now are, with the exception of the ordinary use and wear,*" the charterer does not undertake to become an *insurer* against the perils of the sea, or risks of navigation; and if the boats are *wrecked* and *lost* in a violent storm, during the continuance of the charter, without his fault, he is not liable for their value.

This was an action to recover the value of a steamboat and a canal boat, for not returning the same according to the condition of a charter party, of which the following is a copy. " Articles of agreement made and entered into this 25th day of July, A. D. 1851, by and between Edwin Ames of the one part, and Edgar Belden of the city of Rochester of the other part, witnesseth : the said Edwin Ames of the one part, has this day chartered and hired unto the said Belden of the other part, the steamboat George Clinton of Oswego, burden 103 tons, or thereabouts, with all the appurtenances, cables, anchors, chains, &c. which are new, and which belong to said steamboat, for two months, from the first day of August, to be delivered at the port of Port Ontario. But in case the said Ames shall deliver the said boat at any time before the first day of August, the time shall take date from the time of delivery; and for the use of said steamboat, and for the use of a canal boat, (which is intended to be chartered with said steamboat,) agrees and binds himself to pay to the said Ames, for the use of said boats, two hundred and seventy-five dollars, the payments to be made as follows: one hundred dollars on the delivery of said boats, at sight drafts on said Belden; one hundred dollars on the first day of September, and seventy-five dollars at the expiration of said two months. And it is further understood, that the said Belden shall be at all the expense of manning and furnishing said boat or boats for the time above stated, and return the same

to the said Ames at the port of Port Ontario, *in as good condition as they now are, with the exception of the ordinary use and wear;* and if the said Belden shall at any time refuse to fulfill on his part, the said Ames shall have the right to take possession of the said boats, wherever the same be found. Given under our hands, this 25th day of July, 1851.

Signed,      EDWIN AMES.

EDGAR BELDEN."

The complaint alleged the transfer by Edwin Ames of his interest in the agreement to the plaintiff. The breach assigned was the non-delivery of the boats at Port Ontario, according to the terms of the contract. The defendant, in his answer, alleged that the boats while employed in the purposes of navigation for which they were chartered, and during the continuance of the charter, were, in a violent storm, and by the *act of God,* and without the fault of the defendant, or his servants or agents, wrecked and lost, by reason whereof he was unable to perform the agreement on his part. The plaintiff demurred to this answer.

The issue of law was tried before the Hon. W. F. Allen, at his chambers, upon stipulation, in May, 1853. The demurrer was sustained, and judgment entered for the plaintiff. The defendant appealed to this court.

*C. Whitney,* for the plaintiff.

*Benedict & Martindale,* for the defendant.

*By the Court,* HUBBARD, J. The determination of the issue of law in this case involves a construction of the following clause in the agreement, on which the action is founded. "And it is further understood, that the said Belden shall be at all the expense of running and furnishing said boat or boats, for the time above stated, and return the same to the said Ames at the port of Port Ontario, *in as good condition as they now are, with the exception of the ordinary use and wear.*" It is contended, on the part of the plaintiff, and this is the gravamen of the

action, that the defendant covenanted by the terms of this clause to return the boats *at all hazards*, at the expiration of the lease, and that he is not excused from performance on the ground of the casualty set up in the answer. This construction I think untenable. In my judgment, the understanding expressed is, simply, what the law would have implied, and the language should therefore be construed as having been used with reference to the common law obligation of a bailee in a bailment of this kind. At common law the duty of such a bailee is to exercise that degree of diligence and care in the preservation of the subject of the trust, which a prudent man ordinarily exercises in regard to his own property. (*Story on Bail.* § 399.) His responsibility is limited to ordinary neglect; and hence, if the thing bailed is lost or injured by inevitable accident, without his fault, he is not liable. (*Id.* § 408.)

It cannot be doubted, whatever may be the law with reference to common carriers, but that a bailee may enlarge or vary his common law liability by special agreement; (*Id.* § 33 ; 2 *Com.* 209 ;) that he may become an insurer of the safety and re-delivery of the property, and that if he does so, he cannot plead, in excuse of performance of his undertaking, a disability arising from the *act of God.* (6 *Mass. Rep.* 63. 16 *Id.* 238.) Such a defense would involve the absurdity, in a case like this, of alleging a calamity apprehended by the parties, and against the consequences of which the bailee expressly indemnified the bailor. The class of cases where such a defense is admissible, is when the duty or obligation is merely *implied by law*, as the obligation to return the property when the purposes of the bailment are fulfilled. The act of God cannot be pleaded in excuse of the performance of an express covenant, when compensation in damages may be awarded. (7 *Mass. Rep.* 325. 16 *Id.* 238. 2 *Saund.* 422, *n.* 2. 6 *T. R.* 759. 12 *Wend.* 589. 8 *Cowen*, 298.)

I can find no reported case in point, with reference to the construction which should be given to the language of the agreement now under consideration. I have found none which in principle holds that because such language is used by the parties, or

inserted in their written agreement, it should be construed to mean any thing more than the duty or obligation which the law would have implied had it been omitted.

The case of *Phillips* v. *Stevens*, (16 *Mass. Rep.* 238,) does not, I think, sustain the plaintiff's position. The lessee expressly covenanted to *keep in repair, support and maintain* the fences and buildings on the demised premises. During the continuance of the term the buildings, without the fault of the lessee, were destroyed by fire. It was held that by *force of the covenant*, the lessee was bound to rebuild. There was an additional clause in the lease that the buildings were to be surrendered at the expiration of the term, in as good condition as they were at the date of the lease. But in the opinion of the court no importance seems to have been given to that; the decision is placed expressly on the ground of the obligation *to repair and maintain*, which could not be performed except by rebuilding. This decision was made upon the authority of repeated English cases, which hold the same doctrine, that a covenant *to keep in repair* imposes a duty to rebuild a leased tenement destroyed by an accidental fire, during the term. (*Pardine* v. *Jane*, *All. R.* 27. *Bullock* v. *Dommit*, 6 *D. & E.* 650. *Walton* v. *Water-house*, 2 *Saund.* 420.) So in case of a covenant to build *substantially, and keep in repair* for a given time, a bridge, it having been destroyed by an extraordinary flood, the party was held bound to rebuild. (*Brecknock Canal Co.* v. *Pritchard*, 6 *D. & E.* 751.) Upon the same principle a lessee is bound to pay rent for the whole term, although the premises are consumed by fire in the mean time. (6 *Mass. R.* 63. 3 *John.* 44. *Alleyne*, 26.) The liability is predicated upon the *express undertaking to pay rent ;* if the lessee intends to save himself from the hardship, he should insert an exception in his lease. In this case the defendant could not be exempted from the payment of the agreed price for the use of the boats, by reason of their loss by the perils of the sea, because he made no exception to his agreement to pay.

An express provision in a contract of bailment for hire, to keep the subject of the trust *safely*, will not enlarge the common law

liability of the bailee. That is an obligation which the law implies, that is. *to keep as safely as an ordinarily prudent man would his own goods.* (2 *Black. Com.* 453.) Such a provision will not constitute the bailee an insurer of the safety of the thing bailed; and should it be destroyed by inevitable casualty, or stolen without the fault of the bailee, he will not be responsible. (*Foster* v. *The Essex Bank*, 17 *Mass. Rep.* 501.) In that case Chief Justice Parker, in remarking upon the agreement to keep the money deposited, *safely,* as imposing no greater duty than the exercise of ordinary care, says, " Any thing more than this would amount to an *insurance of the goods, which cannot be presumed to be intended, unless there be an express agreement and an adequate consideration therefor.*" This language is peculiarly applicable to this case. The defendant has not in terms expressly agreed to become an insurer, and there is no consideration expressed. It cannot be inferred that the price of the use of the boats was fixed with reference to any such engagement.

Contracts of bailment, when it is sought to enlarge the liability of the bailee, should, says Justice Story, (*Story on Bail.* § 35,) not be expounded unfavorably to the bailee beyond the obvious scope of the terms of the agreement. According to this rule, a covenant to insure should never be implied; it does not appertain to contracts of bailment, and if superadded it should only be by clear and explicit agreement. It should not be implied from language peculiar to contracts of bailment, which can receive a proper signification as importing a common law obligation, without such implication. This maxim is applicable to such a case: " *Expressio eorum quæ tacite insunt nihil operatur.*" " The expression of a clause which the law implies, works nothing." (*Broom's Legal Maxims*, 187.)

It seems to me, therefore, that the clause in the agreement relating to the return of the boats, to wit, " *in as good condition as they now are, with the exception of the ordinary use and wear,*" being simply what the law would have implied from the nature of the contract, does not increase or vary the common law liability of the defendant. The parties must be presumed to

have used the language in the sense of the common law.  This is but applying, e *converso*, the rule of construction that what the law implies from the words of a written agreement will be regarded as if actually expressed; the mere expression of the implication will therefore add nothing to the force or effect of the instrument.

Another view of this case might be taken, to show that the defendant did not intend to become an insurer; it is, that he would not have been liable for a *partial loss* by inevitable accident, occurring while in the ordinary use of the boats.  By parity of reasoning, therefore, he would not be liable if the destruction of the boats was entire.  But I will not pursue this point, as we prefer to put our decision of the case on the ground that the defendant did not undertake to become an insurer against the perils of the sea or risks of navigation.

The order sustaining the demurrer, and judgment thereon, must be reversed with costs, with leave to the plaintiff to reply.

[OSWEGO GENERAL TERM, April 3, 1854.  *Hubbard*, *Pratt* and *Bacon*, Justices.]