| 61 | 343 |
|----|-----|
| 120 | 620 |
| 61 | 343 |
| 39a | 453 |
| 61 | 343 |
| 153 | 111 |
| 61 | 343 |
| 50a | 257 |
| 61 | 343 |
| 70a | 366 |
| 61 | 343 |
| 171 | 606 |

GEORGE STEELE *et al.*

*v.*

E. A. BUCK.

1. BAILEE—*return of chattel.* Where a vessel is chartered for a specified time, at a fixed price, under a written contract, and a bond with security is given, conditioned for the payment of the price, and for the return of the vessel at the time named "in as tight, staunch and good condition as she now is, reasonable wear and tear excepted," and before the time for her return the vessel is destroyed in a gale by the "act of God," through no fault or negligence whatever, the bailee and his surety are still liable upon their bond, and must respond in damages to the owner of the vessel for not returning her according to the terms of their obligation. But *it seems* that if the liability of the bailee had rested upon the charter alone, without the bond to return, the rule might be different. Nor would the mere fact that, in pursuance of the charter, the vessel had been insured for the benefit of the owner, constitute any defense to an action on such a bond, unless it were also shown that he had received the insurance money, and was therefore not entitled to a second satisfaction for the loss of his property.

2. SAME—*general rule.* The principle underlying all the English and American authorities on this subject is, that a party must perform his contract, and if loss occurs by inevitable accident, the law will let it rest upon the party who has contracted that he will bear it. He is an insurer to the extent of making good the loss. The rule is just, and founded in reason, for if he did not intend to bear the loss, it is natural to presume that he would have stipulated against it. And again, where one of two innocent persons must sustain a loss, the law casts the burden upon the party who agreed to sustain it, or rather, leaves it where the parties, by their agreement, placed it.

3. EXCEPTIONS—*death.* Exceptions to this rule have been allowed in recognizances, where, if the person die, the liability of the surety is discharged; and in an obligation to deliver a living animal, where, if it die, the obligor is excused; and also in cases where a party agrees to render personal service, to work for a stipulated period, or to do a certain class of work that can not be performed by another, and dies before the contract is completed. In all these cases the obligation is discharged.

4. SAME—*implied contracts.* So, too, the performance of duties implied by law may be excused when performance becomes impossible by inevitable accident, but a duty or charge created by the express terms of an agreement may not be so excused. A party having failed to provide for his own protection in case of disaster, the law will not supply the omission.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Messrs. MILLER, VAN ARMAN, FROST & LEWIS, for the appellants.

Messrs. RAE & MITCHELL, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This was an action of debt, brought by the appellee on a bond given by Charles Vogell and William B. Crandall, as principals, and the appellant Steele, as surety, to secure the performance of the covenants of a charter-party bearing even date with the bond. The charter-party was in the usual form, and, by its terms, Vogell and Crandall were to have the exclusive use and possession of the propeller " Equator," to man and run her during the season of 1869, to be employed in the business of commerce and navigation upon the lakes and navigable waters connecting the same; and for the use of the vessel they were to pay a stipulated price, and in addition thereto, it contained an express covenant that they would deliver the propeller at the port of Chicago at the close of the navigation season for that year, in as good and sound condition as she then was, reasonable use and wear excepted.

Two specific breaches were assigned on the covenants contained in the bond: first, that Vogell and Crandall did not pay

the stipulated sums for the use of the vessel; and, second, that they did not return it at the close of the season of navigation of the year 1869, as by the terms of the charter-party they were bound to do.

It is not claimed that there is anything due for the use of the vessel, and the main question in the case arises upon the construction and legal effect of the covenant contained in express terms in the bond as declared on in the second breach, as well as in the charter-party, " to return and give up the said propeller 'Equator' to the said E. A. Buck, his executors, administrators, and assigns, or his or their order, at the port of Chicago, at the close of the said season of the year 1869, in as tight, staunch and good condition as she now is, reasonable wear and tear excepted."

Whatever would discharge the liability of Vogell and Crandall, would of course operate as an acquittance to the appellant Steele, who was only their surety on the bond.

Evidence was tendered on the trial in the court below to prove that, before suit was brought, and while Vogell and Crandall were in possession of the propeller "Equator," and while they were using and employing her under the charter-party on the waters of Lake Michigan, to wit, on the 18th of November, 1869, and before any breach of the condition of the bond, the propeller was overtaken by a gale, and was, by force and violence of the wind and waves, and without any fault or negligence on the part of Vogell and Crandall, or those navigating her, broken to pieces and sunk in the waters of the lake, and become and was utterly lost and destroyed.

The court, on objection being made, rejected the evidence.

This ruling of the court raises the principal question in the case: whether Vogell and Crandall were excused from the performance of the covenant in the charter-party, to secure which the bond had been executed that required them to deliver the propeller to the appellee at the port of Chicago, in consequence of its destruction by the perils of the sea, or by what is commonly called " the act of God."

It is insisted by the counsel for the appellants that, when the performance of a contract has become impossible by the act of God, the party is relieved from the obligation to perform, and that this rule is especially applicable to the liability of a bailee of personal property, even though it arises upon an express contract, and is especially applicable to the covenant to deliver, or surrender up, the property of another received by the obligor or bailee, even though such obligor be a common carrier, as to whom the law applies the strictest rule of liability, and that the covenant for the breach of which this action is brought is of this character.

If no distinction can properly be taken between obligations created by law, or arising out of implied contracts, and where the contract itself expressly creates the duty or charge, then the rule of law insisted upon might be maintained, at least to a limited extent.

The general doctrine is, as laid down in *Paradine* v. *Jaine*, Aleyn, 27, cited in 3 Bos. & Pul. 420 : "Where a party, by his own contract, creates a duty or charge upon himself, he is bound to make it good, if he may, notwithstanding any accident by inevitable necessity, because he might have provided against it by his own contract." And as said by Mr. Justice Chambre, in the latter case: "If a party enter into an absolute contract, without any qualifications or exceptions, and receives from the party, with whom he contracts, the consideration for such engagement, he must abide by the contract, and either do the act or pay damages, his liability arising from his own direct and positive undertaking." To the same effect are the following cases: *Bacon et al.* v. *Cobb et al.* 45 Ill. 47; *Mill Dam Foundry* v. *Hovey*, 21 Pick. 441; *Demott* v. *Jones*, 2 Wallace 1; *School Trustees* v. *Bennett*, 3 Dutch. 518; *Bullock* v. *Dommitt*, 6 Term, 650; *Brennock* v. *Pritchard*, 6 Term, 750.

The principle that lies at the foundation of the series of authorities, English and American, on this question, is, that the party must perform his contract, and if loss occurs by

inevitable accident, the law will let it rest upon the party who has contracted that he will bear it.

The rule is a just one, and has its foundation in reason, for, if he did not intend to bear the loss, it is natural to presume that he would have stipulated against it. It tends to promote justice by regarding the sanctity of contracts. In some instances it may work a hardship; so do all general rules; but they are none the less indispensable in the affairs of life for that reason.

There have been exceptions allowed in obligations taken in judicial proceedings, such as recognizances and replevin bonds. In recognizances, if the person die, the liability of the surety is discharged. So, too, in regard to an obligation to deliver a living animal. If it die, the obligor is excused from performance. The same principle prevails where a party agrees to render personal service, to work for a stipulated period, or to do a certain class of work that can not be performed by another, and dies before the contract is completed; the obligation is discharged. *Schwartz* v. *Saunders*, 46 Ill. 22.

But where the party may perform the contract, and has not provided for the dispensation, the law will not do it for him. Where a tenant, for example, has covenanted to repair, and the buildings are destroyed by fire, or lightning, or the act of God, as it is termed, the tenant must rebuild upon the demised premises. The reason is obvious. He has contracted expressly to do it, and it is possible for him to restore that which has been destroyed, and if he does not do it, he must respond in damages. By rebuilding, it will answer the covenant to repair, and he can not avoid his obligation by reason of the destruction of the building, even without fault on his part. It is the contract, and he must perform it. It is possible for him to comply, and the law will not excuse performance.

A distinction has been taken between implied contracts, or such as the law raises, and express contracts. The performance of duties implied by law may be excused when performance becomes impossible by inevitable accident, but a duty or

348　　　　　　　STEELE *et al. v.* BUCK.　　　　[Sept. T.,

Opinion of the Court.

charge created by the express terms of an agreement may not be so excused.

In Hovey's case, 21 Pick. 47, Mr. Chief Justice SHAW says: "The distinction is now well settled between an obligation or duty imposed by law, and that created by covenant or act of the party. When the law creates a duty, and the party is disabled from performing it, without any fault of his own, the law will excuse him, as in waste to a tenant if the same be destroyed by a tempest or enemies, the lessee will be excused; but where the party, by his own contract, creates a duty or charge upon himself, he is bound to make it good, notwithstanding any accident by inevitable necessity, because he might have provided against it by his contract," and cites 2 Wm. Saund. 422 a, note 2.

The reason given for the rule is, that when, if an event happen which will occasion loss to one or the other contracting parties, yet the party who contracts that the event shall not happen, although he may be unable to perform his contract by reason of the act of God, he shall stand the risk and make good the loss. The party contracting assumes the responsibility for the consequences that may follow, if, for any cause whatever, he may be unable to perform his contract. He is an insurer to the extent of making good the loss.

The covenant in the bond declared on is of this character. It is absolute in its terms. It is a positive undertaking by Vogell and Crandall to restore the propeller at the end of the season for which it was hired, notwithstanding it might be destroyed by the perils of the sea. The charter-party itself provides for the return of the propeller, and if this was all the contract between the parties, there might be some reason for insisting that it creates no higher obligation than the law imposes. The charterers in this instance had given the bond, which is the subject of this action, with security for the performance of this very covenant in the charter-party.

We are at a loss to understand what is wanting to make this an express covenant to re-deliver the propeller at the end of

the navigation season, even to making the charterers insurers against the perils of the sea. Whence the necessity for the bond and security, if it was not the express agreement and intention to charge the charterers, if the propeller was lost by the perils of navigation? If it was simply that the charterers should restore the propeller, in case it were not lost, the charter-party imposed that obligation, and there could be no necessity for taking the bond. Only two covenants contained in the charter-party are specifically named in the bond: first, the payment of the agreed price for the use; and, second, for the return of the propeller. The payment of the hire was a minor consideration, and doubtless the main covenant in the charter-party that the bond was given to secure, was the covenant to return the propeller. No other construction can reasonably be given to it, than that it was an absolute undertaking on the part of the appellant Steele, that the charterers should return the propeller at the end of the navigation season, notwithstanding the perils of the sea. His obligation was absolute, that they should perform that covenant in the charter-party.

The case of *Madeiros* v. *Hill,* 8 Bing. 230, cited by counsel, is not in conflict with the views we have expressed. In that case it was held that it was no defense to an action on a charter-party for not sailing on the voyage towards the port agreed on, that the port was in a state of blockade, if the defendant knew the condition of the port at the time of entering into the charter-party. The rule in *Paradine* v. *Jaine* was applied.

*Taylor* v. *Caldwell,* 113 Eng. C. L. 836, does not seem to us to be exactly in point. The contract was for the use of a music hall for certain days named, in the future. Before either party had entered upon the execution of the contract, the hall was destroyed by fire. It was held, that the parties must have contracted with reference to the continued existence of the thing which constituted the foundation of what was to be done. The hall having ceased to exist, without fault of either party, it was held that both parties were discharged from the

performance of their respective obligations.    Mr. Justice
BLACKBURN, in delivering the judgment of the court, said :
"There seems to be no doubt that, where there is a positive
contract to do a thing, not in itself unlawful, the contractor
must perform it or pay damages for not doing it, although, in
consequence of unforeseen accidents, the performance of his
contract has become unexpectedly burdensome, or even im-
possible;" but takes the case out of the general rule on the
ground that the parties in that case must have contracted with
reference to the continued existence of the thing which formed
the basis of the contract, on the principle of the civil law that
such an exception is implied in every obligation of that char-
acter.

*The brig Casco*, Davies' R. 184, illustrates no principle in-
volved in the decision of this case.

*Ames* v. *Belden*, 17 Barb. 513, may be distinguished from
the case at bar.    There the action was on the charter-party
containing equivalent words to those of the charter-party in
this case, and it was held that a covenant to insure should
never be implied ; a covenant of that nature not appertaining
to contracts of bailment.

Here the action is not on the charter-party, but upon a bond
expressly conditioned for the performance of the covenants of
the charter-party.

The case of *Bacon et al.* v. *Cobb et al.* 45 Ill. 47, is an
authority against the position assumed by the appellant.

The court cites the case of *School Trustees* v. *Bennett*, 3
Dutch. 513, which announces the well recognized principle
that, where one of two innocent persons must sustain a loss,
the law casts the burden upon the party who agreed to sustain
it, or rather leaves it where the parties, by their agreement,
placed it.

Such is the character of this transaction.    Vogell and Cran-
dall, by the terms of the charter-party, agreed to return the
propeller at the end of the navigation season, and the appel-
lant Steele, as their surety, expressly agreed, by the terms of

the bond, which is the subject of this action, that they should perform that covenant in the charter-party. The parties did not provide, by their contract, for any excuse in case of the destruction of the propeller by reason of any accident arising from inevitable necessity, and the law will not supply the omission for the contracting party. Having failed to make provision for their protection in case of disaster, the parties can not now set up, as an excuse for the non-compliance with the express terms of the bond, that the propeller was destroyed by the perils of the sea, and the evidence as to its destruction was properly rejected.

The mere fact that the vessel was insured for the benefit of the appellee, would constitute no defense to the action. Had the appellant offered to prove that the appellee had received the insurance money, it is conceded that no valid objection could have been interposed. He could have but one satisfaction for the loss of his property. This they did not offer to do.

The court ruled correctly in excluding the evidence tendered, and the judgment must be affirmed.

*Judgment affirmed.*

Mr. JUSTICE SHELDON, dissenting : The destruction of the vessel offered to be proved in this case—was by what may be properly termed, the act of God.

It seems to me to be a principle sustained by the authorities, that the obligor in a bond, in order to avoid the forfeiture of his obligation, is not bound at all events to perform the condition of the bond, but is excused from the performance where it has been rendered impossible by the act of God, or of the law. *United States* v. *Thomas,* 15 Wall. 337 ; *Carpenter* v. *Stevens,* 12 Wend. 589 ; *The People* v. *Manning,* 8 Cow. 296 ; *The People* v. *Bartlett,* 3 Hill, 570 ; Co. Litt. 206 (a).

No case which has come under my observation, limits the principle to any particular class of bonds, but it is laid down as a general principle applicable to bonds.

The same doctrine has been applied to absolute express contracts by bailees and common carriers for the delivery of the thing bailed, or to be carried. *Hyland* v. *Paul*, 33 Barb. 241; *Price* v. *Hartshorn*, 44 N. Y. 95. This bond was but to secure the performance of such a contract by bailees.

In *Taylor* v. *Caldwell*, 113 E. C. L. R. 113 (3 Best & Smith, Q. B. 826), upon an elaborate consideration of the subject and review of the authorities, the principle is deduced that, in contracts in which the performance depends on the continued existence of a given person or thing, a condition is implied that the impossibility of performance arising from the perishing of the person or thing shall excuse the performance.

Besides, the charter-party in this case contained a provision that the charterers should cause the vessel to be insured in the name of Buck, the owner, and that they, the charterers, should pay 85 per cent of the premium for insurance. This was done, or proof that it was, was offered.

Taking all the writings together, in order to ascertain the nature of the contract and the intention of the parties, this policy of insurance, and not the bond, would seem to be the kind of indemnity which the parties intended to provide against such a casualty to the vessel as the one that occurred.