## J. F. BOWLER *v.* L. AHLO.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

SUBMITTED JUNE 28, 1897.          DECIDED MARCH 1, 1898.

FREAR AND WHITING, JJ., AND CIRCUIT JUDGE PERRY, IN
PLACE OF JUDD, C.J., ABSENT.

A covenant in a charter-party to surrender the vessel to the owner at
the expiration of the term in as good condition as she now is in,
ordinary wear and tear excepted, is presumably made on the as-
sumption of the continued existence of the vessel, and hence, in
the absence of any intention shown to the contrary, the loss of
the vessel before the expiration of the charter and through no
fault of the charterer will excuse performance of the covenant.

OPINION OF THE COURT BY FREAR, J.

The libellant let the schooner "Mahimahi" to one Ho Pai
Yet for the term of six months from June 15, 1894, for the sum
of $125 per month, the charterer to bear the expenses of mann-
ing, repairing and furnishing the vessel (with certain ex-
ceptions) and at the expiration of the term to "surrender and
yield up the said schooner to the said party of the first part
(libellant) in as good condition as she now is, ordinary use and
wear excepted." The libellee, Ahlo, joined in the charter-party
guaranteeing the payment of the $125 per month and the faith-
ful performance by the charterer of all his agreements and
covenants.

During the term of the charter, on November 14, 1894, the

schooner was wrecked while beating up the channel leading to the harbor at Waialua, Oahu, and became a total loss.

This libel is for $2500 damages for the failure of the charterer to "surrender and yield up" the schooner to the owner at the expiration of the term as agreed.

The Circuit Judge dismissed the libel upon the grounds that the loss occurred through the "Act of God" and not through any fault of the master or charterer; and that the covenant to surrender the vessel at the expiration of the term was only an expression of what the law would imply in the absence of an express agreement and left the parties subject to the common law rule that a bailee is obliged only to exercise due care and is not liable for losses occurring through no fault of his.

On the evidence the finding of the Circuit Judge that the loss occurred through no fault or negligence of the master or charterer must be sustained. The main question is whether the charterer was obliged to return the schooner at all hazards or only in case he was not prevented from doing so through no fault of his own. It will be unnecessary to review each of the numerous cases cited by counsel on both sides. They relate in general to a class of what are called "impossible agreements." There are several classes of such agreements,—those the performance of which is impossible in themselves or is or afterwards becomes impossible by law, those the performance of which becomes impossible by default of one of the parties, and those the performance of which is impossible in fact or becomes impossible without the default of either party. Pollock, Contr., 348 *et seq.* The agreement in question belongs to the last mentioned class. The rule in regard to this class is that the agreement is or becomes void or not according as the intention of the parties was or was not that the agreement should be conditional upon its performance being or continuing possible in fact. In other words the question is one of construction. If it was intended that the charterer should return the vessel to the owner in any event or be liable in damages for not doing so, that is,

if it was intended that he should take the entire risk and insure the return of the vessel, he should be held to his agreement, even though he was prevented from performance by inevitable accident. The loss would have to fall on one of the parties and it should naturally fall on the one who assumed the obligation and did not take the precaution to expressly limit his liability. If, on the other hand, it was intended that the vessel should be returned only in case it should be possible to do so, and it became impossible to do so through no fault of the charterer, he should not be held. There being no obligation to indemnify in such case, the loss would remain where it fell; the charterer would lose the value of the vessel during the remainder of the term and the owner would lose its value thereafter. The intention of the parties may be expressed or implied. The cases cited by counsel are of two classes,—those holding under certain circumstances that exceptions to the contractor's obligation cannot be allowed unless expressly provided for, and those holding under certain other circumstances that certain exceptions are implied. The two classes are in perfect harmony.

The cases in which exceptions are presumed to have been intended are those in which the parties have expressly agreed to do merely what the law would imply and in which the law would imply the exceptions as well as the rule, for in such cases the parties by expressing the usual rule would presumably intend that it should carry with it the usual exceptions; and those cases in which the performance of the contract depends on the existence of a certain thing or condition or set of circumstances, that is, cases in which the parties apparently have taken something for granted and have contracted on that basis and would presumably have contracted differently had they contemplated different circumstances. To illustrate, an apparently absolute contract to marry or to perform personal services is subject to the implied condition that the person shall continue to live. So, an obligation to deliver at a future time a particular horse, whether sold or hired, is at an end if the horse die meanwhile.

A contract to make or bring into existence a thing would
naturally be subject to no exceptions unless expressed, as, a
contract to build and complete a house upon the land of another
by a certain day. The destruction of the house by lightning just
before its completion would not excuse non-performance.
*School Dist. v. Dauchy*, 25 Conn. 530. But a contract merely
to repair a house already in existence would presumably be
made on the basis of a continuance of its existence. In such
case the destruction of the house by fire prior to the completion
of the work would excuse performance. *Lord v. Wheeler*, 1
Gray 282. See also *Wells v. Calnan*, 107 Mass. 514. The
distinction between the two classes of cases is well illustrated by
decisions construing certain covenants usually found in leases.
The covenant to maintain the premises in repair, &c., if made
without express exception or qualification, is held (perhaps by
a somewhat strained construction) to be an absolute undertaking
with no implied exceptions, and the obligation continues though
a house forming part of the premises be destroyed by fire; the
tenant is obliged to rebuild. *Bullock v. Dommitt*, 6 T. R. 650.
Hence, it is usual to expressly except damage by fire or other
unavoidable casualty. But the covenant that at the expiration
of the term the lessee shall deliver up or surrender the premises
to the lessor in the same or as good condition as at the commence-
ment of the lease, ordinary wear and tear excepted, creates no
obligation to rebuild in case of destruction by fire or other un-
avoidable casualty. *Warner v. Hitchins*, 5 Barb. 666; *Miller
v. Morris*, 55 Tex. 412. In such case the parties presumably
have in mind, not the insurance of the existence of the property,
but the return of the property at the expiration of the contract.
The obligation is against holding over, not for the maintenance
of the property. The parties assume that the property is to con-
tinue in existence. When the basis of the obligation is removed
the obligation itself falls. The emphasis is on the word "sur-
render," not on the word "premises." The purpose is to guard
against holding over or damage through the fault of the tenant.

Similar reasoning has been applied in construing charter-parties. The case most similar to the case at bar is that of *Young v. Leary*, 135 N. Y. 569. The charterer agreed that on the termination of the charter he would "deliver the said steam propeller to the Washburn Steamboat Company (the owner) * * * in the same good condition as she is now in, ordinary wear and tear excepted." The court, after referring to the class of cases in which inevitable accidents are held to afford no excuse for non-performance of an absolute contract, said:

"The contract in this case comes as it seems to us under another class which relates to the hiring for use of the thing hired and where an express contract is made to re-deliver the article hired upon the determination of the term of hiring. Even in such cases of express contract, there is implied a condition of the continued existence of the thing which is the subject of the contract, and if it perish without any fault of the hirer, so that re-delivery becomes impossible, the hirer is excused." * * *

"When language like that found in this agreement is used, the condition of continued existence is implied, and as thus interpreted it creates nothing more of an obligation than that which the law raises without any such promise. When language is used which does no more than express in terms the same obligation which the law raises from the facts of the transaction itself, the party using the language is no further bound than he would have been without it."

The court also quoted from Leake on Contracts as follows:

"The authorities establish the principle that where from the nature of the contract it appears that the parties must from the beginning have known that it could not be fulfilled, unless when the time for the fulfillment of the contract arrived, some particular specified thing continued to exist, so that when entering into the contract they must have contemplated such continued existence as the foundation of what was to be done, then

in the absence of any express or implied warranty that the thing shall exist, the contract is not to be construed as a positive contract, but as subject to an implied condition that the parties shall be excused in case before breach the contract becomes impossible from the perishing of the thing without the default of the contractor."

See also *Ames v. Belden*, 17 Barb. 513; *McEvers v. Steamboat Sangamon*, 22 Mo. 189: *Hyland v. Paul*, 33 Barb. 241; *Stewart v. Stone*, 127 N. Y. 500; *Sturn v. Boker*, 150 U. S. 312.

In *Steele v. Buck*, 61 Ill. 343, cited by the libellant, it is true, the court came to a different conclusion, but that suit was brought, not upon the charter-party, but upon a separate bond given to secure the performance of the covenants in the charter-party. The court based its decision on this distinction. It said that if the charter-party were "all the contract between the parties, there might be some reason for insisting that it creates no higher obligation than the law imposes," and distinguished *Ames v. Belden, supra*, on the ground that the action in that case was upon the charter-party itself. Whether this distinction was well-founded in principle, we need not venture to say, but the distinction was taken and the court did not dispute the correctness of decisions of the class to which *Ames v. Belden* belongs. In *Young v. Leary, supra*, the suit was, as in the present case, against the surety and not against the charterer.

The presumption that in cases of this kind the parties contemplate that there should be a continuing obligation only in case of the continued existence of the thing whose existence is necessary to make performance possible may, of course, be rebutted by other appropriate words in the contract. In the present case the other language of the charter-party does not tend in the least to overcome the presumption. If anything, it rather strengthens it.

The decree appealed from is affirmed with costs.

*P. Neumann* and *A. G. M. Robertson* for libellant.

*W. R. Castle, P. L. Weaver* and *G. A. Davis* for libellee.