Boyne Platt et al., Appellees, v. Joe Fischer et al., Defendant. Appeal of Joe Fischer, Appellant.

Gen. No. 38,195.

Opinion filed April 22, 1936.

nied May 5, 1936.

DANA R. SIMPSON, of Chicago, for appellant; JAMES V. KENNY, of Chicago, of counsel.

THEODORE A. KOLB, of Chicago, for certain appellees.

MR. PRESIDING JUSTICE HALL delivered the opinion of the court.

This is an appeal from a decree of the circuit court of Cook county, in and by which defendant, Joe Fischer, is permanently enjoined from the prosecution of an action at law pending in the superior court of Cook county. The action at law in the superior court, the prosecution of which is enjoined by the order of the circuit court, was begun on March 6, 1933. In the declaration filed therein, which was offered and received in evidence in the instant case on behalf of complainant, plaintiff recites *inter alia* that on the 12th day of May, 1926, defendants in that suit,—the plaintiffs in the instant case,—namely, Boyne H. Platt, Henry B. Pritz, Clifford Older, William G. Mawhinney, Fred Oswald, Margery Jane Consoer, H. B. Stoltze, R. A. Smith, Fred Consoer, Grace A. McLeod

and Ruth Kent, created and established a certain land trust, known as Trust No. 1274, with the Union Bank of Chicago, as trustee, holding title to certain real estate for them; that the defendants employed Bert H. Laudermilk Realty Association as their agent for marketing and selling certain lots described in this land trust; that the Bert H. Laudermilk Realty Association entered into a written contract with the plaintiff dated March 31, 1927, which contract is set forth in full in the declaration filed, and is in substance as follows: The Bert H. Laudermilk Realty Association, as agent for the property, of which the Union Bank of Chicago is trustee under an agreement designated as ''Trust No. 1274,'' agreed that the realty association would cause to be conveyed to Joe Fischer by the Union Bank of Chicago, as trustee, certain real estate described in the contract, together with a guarantee policy of title to be issued by the Chicago Title & Trust Company, or a certificate of title to be issued by the Registrar of Titles of Cook county, Illinois, upon the payment by Fischer to the Laudermilk Realty Association of certain amounts therein specified. The payments to be made by Fischer under the terms of this contract were to be made in instalments covering a period of time, and during this time, and until he received his deed upon making the payments agreed to, Fischer also agreed to pay any general taxes or special assessments that might be levied against the property. It is further alleged in this declaration that Fischer made all the payments required of him to be made under the terms of the contract, which included the price to be paid for the property, together with certain taxes and special assessments levied, which amounted in all to the sum of $2,373.95; that after making such payments, he demanded a deed, together with a guarantee policy from the Laudermilk Realty Association, which was acting as agent for the defendants, but that the Lauder-

milk Association had failed and refused to give such a deed and guaranty policy, and he, therefore, prayed judgment for the amount of these payments.

The record discloses that the contract called trust agreement No. 1274, entered into between plaintiffs here and the Union Bank of Chicago, is dated May 12, 1926, and describes certain real estate, of which the property agreed to be conveyed to Fischer is a part, and provides generally that in view of the fact that the Union Bank of Chicago is about to take title to this real estate, that when it has so taken title, it will hold it for the ultimate use and benefit of the persons named as defendants in the suit at law in the superior court—the plaintiffs here—according to certain designated interests in the land which was subsequently conveyed to the Union Bank of Chicago, as trustee, in accordance with the terms of this agreement. In this contract with the Union Bank of Chicago, it was further agreed that the interest of any of the persons mentioned should consist solely of a power of direction to deal with the title and the right to receive the proceeds from rentals or sales of the land described; that in case of the death of any beneficiary, his right and interest should pass to his or her executor, and not to his or her heirs at law; that none of the beneficiaries had any right, title or interest in the real estate, but only an interest in the proceeds to be derived therefrom, and that it was the intention of the instrument to vest the legal and equitable title in the premises in the trustee. It is also provided in this agreement with the Union Bank of Chicago that while the bank is the sole owner of the real estate in so far as the public is concerned, and has full power to deal with it, it is to be understood and agreed that the bank would deal with the property only when authorized to do so in writing, and upon the direction of Haynes Peterson, A. W. Consoer and George Consoer, three of the bene-

ficiaries, and would make conveyances of such land only upon the direction of these three persons; that the trustee should not be required to enter into any personal obligation or liability in dealing with the land, or make itself liable for the payment of any moneys; that the beneficiaries should have the management and control of the property, and of the selling, renting and handling thereof, and that the trustee should not be called upon to do anything in the management or control of the property, payment of taxes, or otherwise, and that the Union Bank of Chicago should receive $100 for accepting the so-called trust and taking title, and $10 per year for holding the title after May 12, 1927, together with fees for making deeds, and reasonable compensation for any special services which might be rendered.

Haynes Peterson died, and thereafter on March 4, 1927, Arthur W. Consoer and George Consoer, for and on behalf of these beneficiaries, entered into a joint three-party contract with the Union Bank of Chicago, as trustee, under the agreement designated as Trust No. 1274, and with Bert H. Laudermilk, wherein this "trust" agreement is referred to, and wherein it is recited that the beneficiaries mentioned were desirous of making a selling arrangement of the premises held by the Union Bank of Chicago, as above set forth, and in furtherance of such selling arrangement, had directed the trustee to join in this tri-party agreement. The substance of this agreement is as follows: That the Laudermilk Association was employed by the beneficiaries as their exclusive agent to handle the properties and make sale thereof for a period beginning with the date of the contract; that the beneficiaries under this "trust" agreement with the Union Bank of Chicago authorized and directed the bank, as trustee, to execute the contract and carry out the provisions, and to continue as trustee; that the beneficiaries would install certain improvements in the properties;

that the beneficiaries, at their expense, would cause the trustee to furnish guarantee policies of the Chicago Title & Trust Company with each lot which might be sold under the contract; that the instalments of interest and principal accruing on lots sold should be collected by the trustee, and deposited by it as directed by the beneficiaries; that the beneficiaries would pay the taxes and assessments on the properties, except in cases where the contracts made with the purchaser would provide that the purchaser should pay the taxes and assessments. This contract further provided the amount of commissions that should be paid to Laudermilk out of the purchase price paid for any of these properties and it provides that there should be no liability on the part of the trustee for anything, except such moneys as might come into its hands.

The bill of complaint herein brought to enjoin the action at law, was filed on May 3, 1933, and recites in substance, that it is filed by Boyne Platt and 11 other persons, who constituted the sole beneficiaries under the land-holding "trust" No. 1274, in which the Union Bank of Chicago, as trustee, holds the legal and equitable title to certain lands described in the bill. Lawrence S. Sutton, who had been appointed successor trustee to the Union Bank, also joined as a party complainant. The defendants are the Union Bank of Chicago, James S. Rodie, its receiver, and Joe Fischer. Prior to this the Union Bank of Chicago had been closed, and the auditor of public accounts had taken possession in June, 1932. The allegations in the bill are to the effect that the Union Bank, as such trustee, through Bert H. Laudermilk, had entered into a contract with the defendant, Joe Fischer, to sell him a lot; that he had made payment of the purchase price, in instalments, the last three instalments having been paid to James S. Rodie, the receiver of the trustee bank, who received such payments under an agreement made with the beneficiaries; that he, Fischer, de-

manded a deed and guaranty policy from the trustee and its receiver, and failing to obtain it, had brought a suit at law in the superior court against the beneficiaries of the trust,—the complainants in the bill,—based on a rescission of the contract, because of the failure of the trustee and its receiver to fully execute it, by delivering the deed and policy. It is alleged that on February 27, 1933, a tender was made of a deed and guaranty policy to Fischer, but that he refused to accept it. The bill alleges that the beneficiaries are not liable, either for damages, or for the return of the money which the lot buyer had paid to the bank; that their defense could not properly be interposed in the suit at law; that the court at law did not have jurisdiction; that the matters in controversy arose out of a trust, and were not triable at law, but only in equity; that, even though a judgment were recovered against them at law, they would have an action over against the trustee and its receiver, who were made parties defendant to the bill. The prayer of the bill is that the court construe the trust agreement and other documents mentioned in the bill, and declare their meaning and effect; that the court determine the rights and liabilities of all of the parties to the suit, in connection with the matters in controversy; that the court pass on the right of the defendant Fischer to declare a rescission, and, if he is entitled to sue for the money he had paid, or for damages, that the court ascertain and fix the same, and find from whom such recovery should be had, and enter judgment accordingly, and that the court enjoin the prosecution of the suit at law, and for other relief. The Union Bank and Rodie answered, praying for strict proof. Fischer demurred, and after the demurrer was overruled, answered. He pleaded ignorance of many of the allegations of the bill, virtually admitted others, recited his experiences in attempting to have his contract performed, and denied that the complainants were entitled to any relief.

Replications were filed. The cause was referred to a master in chancery. After hearing the evidence, the master made a report, in which he held that the deed to Fischer had been tendered within a reasonable time, and recommended that Fischer be enjoined from maintaining his suit in the superior court. Objections to this report were presented to the master, and an order was entered in the circuit court allowing them to stand as exceptions. On the day the master's report was presented to the chancellor, the defendants moved for leave to file a counterclaim under the new Practice Act. Subsequently, a decree was entered by the court denying leave to Fischer to file a counterclaim, confirming the master's report, permanently enjoining the further prosecution of the suit at law, and awarding a cost judgment against Joe Fischer, which included the fees of the master. From this decree, Joe Fischer appealed.

By the three-party contract entered into between complainants in the instant case (the defendants in the suit at law sought to be enjoined), the Union Bank of Chicago and the Laudermilk Association, the Laudermilk Association became the authorized agent of the defendants to enter into the contract with Fischer for the sale to Fischer of the lot mentioned.

Among other things prayed for by plaintiffs in the bill filed here is that the court pass upon the question of the right of the defendant Fischer to declare a rescission of the contract, and that if it should be found that Fischer is entitled to sue for and recover the moneys he has paid, that the court ascertain and fix the amount, and enter judgment accordingly. It is admitted that Fischer had fully performed, and that complainants had not, and as to Fischer's right to recover the moneys paid out by him, there can be no question. Under the terms of his contract, he was entitled to his deed and guaranty policy upon making his last payment on September 19, 1932, and it was not

until February 27, 1933, that a tender was made of the deed and policy, which he then had the right to and did refuse to accept. It was not because of any fault of Fischer's that these beneficiaries or their agents could not and did not perform.

In *Walker v. Tucker,* 70 Ill. 527, the Supreme Court said:

"It is elementary law that, when the contract is to do a thing which is possible in itself, the promiser will be liable for a breach thereof, notwithstanding it was beyond his power to perform it. . . . 1 Chitty on Conts. (11 Am. Ed.) 1074." See also to the same effect, *Serber v. McLaughlin,* 97 Ill. App. 104, and *Steele v. Buck,* 61 Ill. 343, in which last case, the court said:

"The general doctrine is, as laid down in *Paradine v. Jaine,* Aleyn, 27, cited in 3 Bos. & Pul. 420: 'Where a party, by his own contract, creates a duty or charge upon himself, he is bound to make it good, if he may, notwithstanding any accident by inevitable necessity, because he might have provided against it by his own contract.' And as said by Mr. Justice Chambre, in the latter case: 'If a party enter into an absolute contract, without any qualifications or exceptions, and receives from the party, with whom he contracts, the consideration for such engagement, he must abide by the contract, and either do the act or pay damages, his liability arising from his own direct and positive undertaking.' To the same effect are the following cases: *Bacon et al. v. Cobb et al.,* 45 Ill. 47; *Mill Dam Foundry v. Hovey,* 21 Pick. 441; *Demott v. Jones,* 2 Wallace 1; *School Trustees v. Bennett,* 3 Dutch, 518; *Bullock v. Dommitt,* 6 Term, 650; *Brennock v. Pritchard,* 6 Term, 750."

Pending negotiations between the parties, and on January 4, 1933, a petition was presented to the circuit court in a proceeding concerning the liquidation of the affairs of the Union Bank of Chicago, in which the

establishment of the trust referred to herein was recited, the appointment of James S. Rodie, as receiver for the Union Bank of Chicago suggested, and a statement made of certain arrangements between the beneficiaries and the receiver for the collections to be made by this trust company as trustees under this Union Bank Trust No. 1274. Particular reference was made to the claim of Joe Fischer, and in this proceeding, the circuit court entered the following order:

"On motion of Theodore A. Kolb, solicitor for Boyne H. Platt and certain other intervening petitioners, it is ordered that the order entered by this court on December 21, 1932, appointing Dana R. Simpson successor trustee, be vacated; that the Union Bank of Chicago and James S. Rodie, its receiver, be ordered to pay to the clerk of this court out of funds in his hands belonging to Trust #1354, when the money comes into his hands in the course of administration, the sum of Two Thousand ($2000) dollars, said sum to be held subject to the further order of this court on notice to Daniel D. Glasser, Esq. solicitor for Joe Fischer; that said receiver is ordered to pay all remaining moneys on hand in said trust at the time of the closing of the bank as well as all funds by him received thereafter to Lawrence S. Sutton who has been appointed successor trustee by the beneficiaries of said Trust, and to convey to him, in accordance with the documents filed with him on January 4th, 1933, title to all lands and other property held in said trust." While the court in its order refers to this fund as belonging to "Trust No. 1354," we are of the opinion that the language of the order sufficiently identifies the fund as belonging to "trust 1274."

It is not contended by plaintiffs in the bill filed here that Fischer has not complied with his contract, which was entered into with him on behalf of and by the agents of the plaintiffs in this cause, and that plaintiffs have not performed as they agreed. There is and

was no question of fact to be determined. The circuit court has jurisdiction of all the parties involved in the suit at law, of the parties involved in this proceeding, and of the entire subject matter, and of all things involved in both proceedings. Upon the undisputed facts before it, and in view of the conflicting interests of the parties, the court should have asserted its jurisdiction and entered a decree in Fischer's favor, ordering that the amounts paid out by Fischer on account of the purchase of the lot, together with the amounts paid by him for taxes and special assessments on the land, be paid to him. If the moneys in the hands of the clerk of the court are not sufficient for this purpose, and there are not sufficient funds in the hands of the successor trustee, on account of the Fischer purchase, to pay the balance due Fischer, then it is our opinion that the beneficiaries named—the complainants in this proceeding—are liable to reimburse Fischer for any further amounts found to be due him.

On the question of the duty of a court of chancery under similar circumstances, the court said in *Warfield-Pratt-Howell Co. v. Williamson*, 233 Ill. 487:

"Plaintiffs in error seek to maintain the proposition that since the relation of the parties, as well as the relief sought, is purely legal, equity has no jurisdiction. Defendant in error seeks to uphold the jurisdiction of equity on the ground that the case falls within the exclusive jurisdiction of a court of equity. Neither of these contentions is sound. In our opinion the case belongs to that class where both the primary rights and the relief sought are purely legal and therefore cognizable in a court of law, but of which a court of equity will take jurisdiction on the ground that, owing to the methods of procedure and the means available to carry its decrees into execution, its remedies are more adequate."

The cause is, therefore, reversed and remanded with the direction that the court enter a decree in conformity with the views herein expressed, and that the order of the court enjoining further prosecution of the suit at law, be made permanent. It is further ordered that the costs, including the fees of the master in chancery, be assessed against the plaintiffs in the instant case.

*Reversed and remanded with directions.*

HEBEL, J., and DENIS E. SULLIVAN, J., concur.