## WARTH v. MACK et al.

(Circuit Court of Appeals, Second Circuit. April 8, 1897.)

HIRE OF CHATTELS — CONTRACT — TERMINATION BY DESTRUCTION OF THE CHATTEL.

Plaintiff delivered to defendants a patented machine, under a contract providing that they should pay for its use a stipulated royalty semiannually until the expiration of the patents; that they might terminate the contract by returning the machine, and paying the amount then due; and that, if the machine should be destroyed by fire, plaintiff should furnish another at a specified price, and, if he refused to do so, defendants might have one made, the new machine, in either case, to be subject to the payment of royalty and to all other conditions of the contract. *Held*, that defendants, upon the destruction of the machine by fire without their fault, could not terminate the contract, and avoid liability for royalty subsequently accruing, without procuring another machine, and delivering it to plaintiff.

In Error to the Circuit Court of the United States for the Southern District of New York.

Albert Stickney and Rudolf Dulon, for plaintiff in error.

Hoadly, Lauterbach & Johnson (John V. Bouvier, of counsel), for defendants in error.

Before PECKHAM, Circuit Justice, and WALLACE and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. This is a writ of error by the plaintiff in the court below to review a judgment at law. The action was tried before the court, trial by jury having been waived by the written stipulation of the parties.

The action was brought to recover royalties amounting to $2,250, alleged to be payable pursuant to a written contract, dated February 9, 1892, executed by Albin Warth, the testator of the plaintiff, and the defendants.

The provisions of the contract, so far as they are material, are as follows:

"Whereas, certain letters patent of the United States of America have been issued to Albin Warth, of Stapleton, in the county of Richmond and state of New York, for his new and useful improvement in machines for cutting textile and other materials, also in feed mechanism and mechanical movement for the same, and for improvements in fastenings for said goods, and which said letters patent are numbered and dated as follows, to wit:

"[Then follows the enumeration of twenty-seven specified patents, the first dated August 2, 1870, and the latest November 21, 1882.]

"And whereas, Mack, Stadler and Company, co-partners, doing business in the city of Cincinnati, in the state of Ohio, are desirous of acquiring the right to use in their own business, in the manufacture of clothing, under the firm

name of Mack, Stadler & Co., at the city of Cincinnati, the cutting machine owned by said Warth, built under the aforesaid patents, or some one or more of them, marked D, numbered 88, and of one one-quarter inch cutting capacity:

"Now, know all men by these presents, that the said Albin Warth, licensor, for the consideration of eleven hundred and fifty dollars, to be paid to him or his legal representatives or assigns by the said Mack, Stadler & Co., licensees, and upon the terms and conditions and payment of royalty as hereinafter set forth, hath given and granted, and by these presents doth give and grant, to the aforesaid Mack, Stadler & Co., the license and privilege of using in their said business of clothing manufacturing the aforesaid machine; and the said licensor and licensees do hereby covenant and agree to and with each other that the terms and conditions of this license shall be as follows, to wit:

"First. That the said licensor having furnished the said licensees with the aforesaid machine, the receipt of which is hereby acknowledged, they, the said licensees, shall pay the said licensor or his legal representatives or assigns the aforesaid sum of eleven hundred and fifty dollars on demand, and shall further pay or cause to be paid to the said licensor, his legal representatives or assigns, semiannually, the royalty of one hundred and fifty dollars, which semiannual royalty shall be due and payable on the ninth day of August, 1883, and on the ninth day of February, 1884, and which semiannual royalty shall continue to be due and payable on the anniversary of each of the said semiannual dates, until each of the patents herein named shall have run out.

"Second. That at all reasonable times the said machine shall be open to the inspection of said licensor or his legal representatives or assigns. In the event of said machine being worn out by legitimate use, upon its return to said licensor, or in the event of its destruction by fire, said licensor will, within a reasonable time, furnish to the licensees, upon the payment of six hundred and fifty dollars, for the construction of a new machine, of the same kind and capacity, in place of the one so worn out or destroyed; or if said licensor shall refuse to furnish such new machine, which he is at liberty to do, then said licensees may elsewhere construct or cause to be constructed such new machine in place of the one worn out or destroyed as aforesaid; but every such new machine, whether furnished by said licensor or otherwise as above provided, shall be subject to the payment of said royalty, and to all other conditions and provisions herein contained.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"Fourth. This license is personal to the said licensees, and shall not be assignable to or available by any other person or persons without the written consent of the said licensor or his legal representatives or assigns; nor shall the royalty herein set forth cease to be paid under any circumstances whatsoever, except under the conditions herein named.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"Seventh. The said licensees may terminate the payment of royalty herein mentioned upon the condition that the aforesaid machine shall be returned and delivered to said licensor by the said licensees with payment of royalty up to date of such return; and upon the further condition, and the said licensees agree, that they will not thereafter use or authorize, or allow to be used, directly or indirectly, in their business or elsewhere, any other cloth-cutting machine until all the patents herein mentioned shall have run out."

The court found, as matters of fact, that, pursuant to the contract, the machine described therein was furnished to and received by the defendants, and remained in their possession until November 20, 1886, when, by an accidental fire, happening without their fault, it was totally destroyed; that the defendants had paid all the royalties which by the terms of the contract became payable August 9, 1886, but that they did not pay any part of the royalty for the next six months, and payable February 9, 1887; that the defendants offered to return to Warth the burnt remains of the machine, if any there were, and to pay all royalties due under the contract at the date of the fire, and in other respects to perform the conditions of the sev-

enth clause of the contract; and that, after the commencement of the action, they duly tendered and paid into court the sum of $247, as the royalty due at the date of the destruction of the machine. The court found, as legal conclusions, that, under the terms of the contract, the defendants were bailees for hire, and the contract was one of hiring; that the total destruction of the machine by fire, without fault of either party, operated as a dissolution of the contract, and caused a failure of the consideration, in the absence of any reproduction of a similar machine either by the licensor or licensees in the manner by said contract provided; and that the plaintiff was entitled to recover only the amount tendered by the defendants.

The assignments of error present the single question whether, in view of the terms of the contract, royalties were recoverable which accrued after the date of the destruction of the machine by fire.

By the contract in question, the defendants were licensed to use, during the term of several letters patent, the machine which was destroyed by fire, and, as they were not licensed to otherwise enjoy the privileges of any of the patents, the contract was essentially one for the hiring of a chattel; and we should agree with the decision of the learned judge of the court below were it not for the effect which it seems to us must be given to the special provisions of the contract. Upon principle and authority, in the absence of express stipulations to the contrary, in a contract for the hiring of a chattel, the hirer is only liable pro tanto for the payment of the hire if, without fault on his part, the chattel is destroyed before the expiration of the period during which he was to have the use of it. By this contract, however, the parties agreed to terms which introduced very important qualifications of the rights and obligations which would otherwise have been implied. They agreed (clause 4) that the royalty, payable semiannually, until the expiration of the term of all the patents, should be paid "under any circumstances whatsoever, except under the conditions herein named"; that (clause 7) the defendants might terminate payment of royalty by returning the machine, and paying the amount due at that date; and (clause 2) that, in the event of the destruction of the machine by fire, the defendants should pay the licensor the sum of $650, and the latter should furnish them a new machine, of the same kind and capacity, or upon his refusal the defendants might construct one; and in either case the royalty should be payable as originally provided, and all the other conditions of the contract should remain in force. It was entirely competent for them to agree that, if the machine should be destroyed by fire, the defendants should, nevertheless, continue to pay the reserved royalty; and, if they did so agree, the defendants must fulfill, conformably with the general rule that where a party, by his own contract, creates a duty or obligation upon himself, he is bound to make it good or answer in damages, although prevented in the performance by inevitable accident. Burrill v. Crossman, 35 U. S. App. 608, 16 C. C. A. 381, and 69 Fed. 747; Dermott v. Jones, 2 Wall. 1; Bullock v. Dommitt, 6 Term R. 650; Brecknock Co. v. Pritchard, Id. 750; Adams v. Nichols, 19 Pick. 275; Trustees v. Bennett, 27 N. J. Law, 513.

Whether the covenants of the fourth and seventh clauses, independently of the second clause, would compel a construction of the contract by which the defendants should be held liable for the payment of the royalty after the destruction of the machine, is a question which we are not called upon to decide. The second clause was manifestly framed ex industria, to meet the precise contingency which has happened, and remove all doubt as to the rights and obligations of the parties in case of the destruction of the machine by fire. It provides that in that event the licensor shall furnish a new machine for $650 (the price of the original machine having been $1,150); but, if he does not, the defendants may provide themselves with one from some other source, and that in either case the subsequently accruing royalty shall be paid, and all the other conditions of the contract remain in force. This clause would be obliterated from the contract if the defendants are permitted, when the machine has been destroyed by fire, to terminate the contract, without procuring another machine, and returning it to the licensor. The seventh clause contemplates that the defendants, upon exercising the privilege of terminating the license, are to give an equivalent therefor. A machine worn out by use or ruined by fire would not be an equivalent, in any fair sense, and cannot be regarded as the one which the parties had in mind. The clause implies that they are to return a machine then in their possession, and capable of use. Read together, the clauses mean that, in case the machine be worn out by use or destroyed by fire, a new machine is to be substituted, and all the other terms of the contract are to remain in force; and, if the defendants elect to terminate the license, they are to return to the licensor the original machine, if it is not worn out or destroyed, and, if it is worn out or destroyed, a substituted machine. Upon any other construction, the licensor would get no equivalent for the privilege given to the licensee of terminating the license, and would be deprived of his option to furnish the defendants, in case of the destruction of the original machine by fire, with a new machine, and be paid $650 for it; while the defendants would escape all obligation to pay royalties, notwithstanding the rigorous terms of the fourth clause, by going through the farce of offering to return a thing no longer in existence.

We conclude, therefore, that the defendants were not at liberty to terminate the license, by offering to return the destroyed machine; and, as they have not done this, they remain under a subsisting obligation to pay the royalties.

The judgment of the circuit court is reversed.