## MOORE v. SUN PRINTING & PUBLISHING ASS'N.

(Circuit Court of Appeals, Second Circuit. April 3, 1900.)

No. 123.

1. CONTRACTS IN NAME OF AGENT—ENFORCEMENT AGAINST PRINCIPAL.

A contract may be enforced against one shown to have been the real principal therein, although it purports to be the individual contract of the agent by whom it was made.

2 SHIPPING—CONSTRUCTION OF CHARTER—LIABILITY OF CHARTERER FOR LOSS OF VESSEL.

A charterer, who bound himself by the contract to return the vessel at the expiration of the term of hiring in as good condition as at the beginning, "fair wear and tear from reasonable use only excepted," and who also explicitly undertook to be responsible for any loss or damage to any part of the vessel, her equipment and furniture, and to secure the owner in a specified sum against all losses and damages which might occur to her, is not relieved from the obligation to pay the owner her value as fixed in the contract on a failure to return her by the fact that she was lost without fault on his part, since such contingency might reasonably have been anticipated, and his liability in that event provided against had such been the intention of the parties.

3. SAME—DAMAGES FOR LOSS OF VESSEL—STIPULATED VALUE.

It is competent for the parties to a charter to fix the value of the vessel therein as a basis of damages in the event of her loss, and such valuation is conclusive upon them in the absence of fraud or mutual mistake, especially where the vessel was one built as a pleasure yacht, and having no determinable market value.

4. SAME—CONSTRUCTION OF CHARTER.

The charter of a yacht required the charterer to pay a stipulated sum as hire during the term of the charter, to return the vessel in good condition at the expiration of the term, to be responsible for any loss or damage to her or her equipment or furniture, and to give security in the sum of $75,000 for the performance of the contract. It also provided that "for the purpose of this charter the value of the yacht shall be considered and taken at the sum of $75,000," and that the liability of the charterer should in no case exceed the sum of $75,000. *Held,* that the provision fixing the value of the yacht was solely for the purpose of determining the damages in case of her loss or injury, and that on her total loss while in possession of the charterer the owner was entitled to recover the full sum of $75,000, without deduction on account of the hire paid by the charterer.

Appeal from the District Court of the United States for the Southern District of New York.

George Zabriskie, for libelant.

Franklin Bartlett, for respondent.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. The yacht Kanapaha, owned by the libelant, was wrecked by stranding upon a reef on the northerly shore of the Island of Cuba, about $2\frac{1}{2}$ miles from the shore, and about

7½ miles from Nuevitas, while proceeding westward to the port of Havana, and became a total loss. Her owner brought this action to recover her value against the Sun Printing & Publishing Association, as the charterer of the yacht, under whose control and management she was at the time. The charter provided that at the expiration of the charter term (four months,—from June 1 to October 1, 1898) the charterer would return the yacht "in as good condition as at the start, fair wear and tear from reasonable and proper use only excepted." It also provided that the charterer should be "liable and responsible for any and all loss and damage to hull, machinery, equipment, tackle, spars, furniture, and the like," and that the charterer should "procure security and guaranty to and for the owner in the sum of $75,000 to secure any and all losses and damages which may occur to said boat or its belongings which may be sustained by the owner by reason of such loss or damage, and by reason of the breach of any of the terms or conditions of this contract." The libel alleged the breach of these conditions, and also alleged that the yacht was lost by the negligent navigation of the charterer. The court below decreed in favor of the libelant, awarding him a recovery of $65,000, with interest. (D. C.) 95 Fed. 485. Both parties have appealed from the decree, the defendant insisting that it was not liable at all, and the libelant insisting that the damages awarded should have been $75,000 and interest.

That the Sun Printing & Publishing Association was the charterer of the yacht, notwithstanding Chester S. Lord was named as such in the contract, and that the corporation sanctioned and ratified his act in entering into the charter, we entertain no doubt; and we fully agree with the learned judge who decided the cause in the court below in respect to these propositions, and deem it unnecessary to enlarge upon the very satisfactory reasons assigned in his opinion. As the defendant was the real principal, the libelant was entitled to enforce the contract against it, notwithstanding it purported to be a contract of the agent. Steamship Co. v. Harbison, 21 Blatchf. 332, 336, 16 Fed. 688.

It is insisted for the charterer that the yacht perished without any fault on the part of those who were navigating her, and, consequently, that the case is one for the application of the principle, well settled in the law of bailments, that the hirer is absolved from further obligation where the hired thing is destroyed without his fault, so that redelivery to the bailor is impossible. This principle is deduced from the implied conditions of a contract of bailment by which the bailee only undertakes to exercise due care in the use of the article hired, and to restore it to the bailor in as good condition as when received, unless it be destroyed or deteriorated by natural decay, or by external means without his default. The rule of the law of bailments does not conflict with the general principle that where a party, by his own contract, creates a duty or obligation upon himself, he is bound to make it good, or answer in damages, although prevented from performance by inevitable accident. This principle is applicable to contracts of hiring as well as to all other contracts, and its application is illustrated in numerous decisions in respect to a great variety of

contracts. Thus it has always been settled that when a lessee has covenanted in his lease to keep the demised premises in good order, and surrender them to the lessor at the expiration of the term in as good order as they were originally, he is bound to rebuild, although the premises are meantime destroyed by an accidental fire. Beach v. Crain, 2 N. Y. 86; Hoy v. Holt, 91 Pa. St. 88; Leavitt v. Fletcher, 10 Allen, 119; Coles v. Manufacturing Co., 39 N. J. Law, 326; Proctor v. Keith, 12 B. Mon. 252; David v. Ryan, 47 Iowa, 642. The principle has been applied with great strictness in charter party contracts. Thus, in Pope v. Bavidge, 10 Exch. 73, where the charter provided that the vessel should make six specified voyages not later than a specified day, it was held to be no defense in an action by the charterer against the shipowner that during the first three voyages the vessel was so damaged by accidents of the seas and navigation that she could not be repaired in time to perform the remaining voyages. In Burrill v. Crossman, 35 U. S. App. 608, 16 C. C. A. 381, 69 Fed. 747, we had occasion in this court to apply it in the case of a charter party, and held that, inasmuch as the contract contained an absolute obligation to do certain acts within a time definitely fixed, nonperformance was not excused, although performance became impossible by events occurring without the fault of the promisor. In that case the defense was that performance was made impossible by the act of the public enemy,—the war vessels of a foreign power. The cases which are sometimes referred to as exceptions to the general rule are not exceptions, but were those in which impossibility of performance existed when the contract was made and its obligations were held discharged upon the ground of mutual mistake, or those where the contract itself implied a condition that performance should be dependent upon the continued existence of the subject of the contract. The general doctrine may be stated in the language of the court in Baily v. De Crespigny, L. R. 4 Q. B. 185:

"There can be no doubt that a man may, by an absolute contract, bind himself to perform things which subsequently become impossible, or to pay damages for the nonperformance; and this construction is to be put upon an unqualified undertaking where the event which causes the impossibility was or might have been anticipated and guarded against in the contract, or where the impossibility arises from the act or default of the promisor. But where the event is of such a character that it cannot reasonably be supposed to have been in the contemplation of the contracting parties when the contract was made, they will not be held bound by general words, which, though large enough to include, were not used with reference to the possibility of the particular contingency which afterwards happened."

A contract of hiring presupposes the continued existence of the thing hired during the term of hiring; and because the parties must have known that otherwise it could not be fulfilled, and the whole contract is founded upon that understanding, the courts have construed express promises for the redelivery of the thing in as good condition as when received as intended merely to stand for the implied condition, and not as intended to impose a more stringent liability upon the hirer. Such a case was Young v. Leary, 135 N. Y. 569, 32 N. E. 607. That was an action to recover of a charterer

the value of a vessel which was destroyed during the charter term by fire, and was brought for the breach of a condition in the charter to deliver the vessel to the owner at its termination "in the same good condition as she is now, ordinary wear and tear excepted." The court read the condition as intended to create no other obligation than would have been raised by implication without it, and said:

"When language is used which does no more than express in terms the same obligation which the law raises from the facts of the transaction itself, the party using the language is no further bound than he would have been without it."

Decisions to the same effect are Ames v. Belden, 17 Barb. 513, and Hyland v. Paul, 33 Barb. 241. On the other hand, the supreme court of Massachusetts decided, in an action brought to recover damages to the article hired, caused by accidental injuries, where the contract contained a condition to return it "in as good order as when received, customary wear and tear excepted," that the bailee was not excused from performance. Harvey v. Murray, 136 Mass. 377. In Drake v. White, 117 Mass. 10, there was a bailment of personal property by a debtor, who pledged it as collateral security for a loan to the defendants upon the express promise of the latter "to deliver the same, or its equivalent in money," on the payment of the loan. The court, holding the creditor not discharged by the destruction of the property by fire without his fault, based its decision upon the terms of the express contract to redeliver, and used this language:

"If, in the common case of a pledge, the common-law contract was reduced to writing, it would contain, among other things, a stipulation that the pledgee should not be responsible for the loss of the property, unless some want of reasonable and ordinary care on his part were the cause of such loss. In the present case the parties have reduced their contract to writing, and have omitted to attach to the defendant's liability for the property any limitation whatever. On the contrary, their express promise is to do one or the other of two things: either to return the property specifically, or to pay for it in money."

The question in all cases of this kind is a question of the construction of the contract, and the defense of impossibility of performance has been sustained, not because contracts of hiring are not within the general rule, but because the terms of the particular contract were thought to withhold it from the rule. Dexter v. Norton, 47 N. Y. 62.

In the case of Warth's Ex'x v. Mack, 51 U. S. App. 133, 25 C. C. A. 235, 79 Fed. 955, this court applied the rule to a contract of bailment, and held the promisor not to be released from performance by impossibility. Our decision proceeded upon the ground that it was inferable from the various provisions of the contract that the bailee was not to be absolved in case of the destruction by fire without his fault of the subject of the bailment. In the present case the charterer not only explicitly undertook by the contract to return the yacht at the expiration of the term of hiring in as good condition as at the beginning, "fair wear and tear from reasonable and proper use only excepted," but also explicitly undertook to be responsible for any loss or damage to any part of the vessel, her equipment and

furniture, and also to secure the owner in a specified sum against all losses and damages which might occur to her. It is impossible to construe such a contract as contemplating that the loss of the yacht by vis major or inevitable accident should discharge the charterer from further liability. The case is one where the promisor must fulfill the terms of his promise, or respond in damages for a breach.

We are unable to agree with the court below that the libelant was entitled to recover only $65,000 as damages for the loss of the yacht. The charter contained this provision: "For the purpose of this charter, the value of the yacht shall be considered and taken at the sum of $75,000." It appears from the testimony in the record, and, indeed, the fact is one of which the court may take judicial notice, that the market value of yachts is a very uncertain quantity. These vessels, built for pleasure purposes, and to suit the tastes and caprices of the original owner, seldom command approximately their real value when offered for sale in the market, and fluctuate in the estimation of purchasers with the notions and fashions of the day. As Capt. Atkinson testifies, "A yacht has no value except a fancy valuation." It is competent for the parties themselves to fix the value of given property as the basis for ascertaining damages in the event of destruction or injury to it, and the agreement is, in the absence of fraud or mutual mistake, conclusive upon them. Providence & S. S. Co. v. Phœnix Ins. Co., 89 N. Y. 559; Hart v. Railroad Co., 112 U. S. 331, 5 Sup. Ct. 151, 28 L. Ed. 717; Graves v. Railroad Co., 137 Mass. 33; Railroad Co. v. Sayles, 58 U. S. App. 18, 32 C. C. A. 485, 87 Fed. 444. Even in cases where the question arises whether a sum fixed in the contract as damages for a breach is to be treated as a penalty or as liquidated damages the courts treat it as liquidated damages when, considering the subject-matter and nature of the agreement, and the difficulty of estimating exact damages, the intention of the parties to consider it as liquidated damages may be inferred.

The learned judge in the court below was of the opinion that the sum fixed was intended as the limit of the liability of the charterer for a breach of all the conditions of the contract, including those of the payment of the charter hire. In reaching this conclusion he placed emphasis upon another condition of the charter providing that the liability of the charterer should "in no case exceed the sum of $75,000," and held that, inasmuch as the charter hire, $10,000, had been paid by the charterer, the latter's liability did not exceed $65,000.

We think it was the meaning of the provision fixing the value of the yacht to fix it for the purpose of determining her value in case of her injury or destruction as the basis of damages, and that this was practically the only purpose contemplated by the provision. It surely was unnecessary to agree upon the value of the vessel with any reference to the payment of the charter hire, or of demurrage for detention beyond the charter period, or for the fulfillment of any of the conditions in which the value of the vessel could not affect the amount of damages arising from the breach.

These conclusions require a modification of the decree in the court below. The cause is accordingly remitted to that court, with instruc-

tions to decree for the libelant in the sum of $75,000, and interest from October 1, 1898. The libelant is entitled to the costs of this court.