UNITED STATES, appellant, *v.* POWER, respondent.

BAILMENT — *Contract to transport Indian supplies — River risks —*
*Negligence — Loss by fire.* — P. made a contract with the United States,
through the commissioner of Indian affairs, to transport certain sup-
plies from several eastern cities to points within the territory of Mon-
tana.   The contract was in the usual form of government transportation
contracts, except that there was noted on the tabular statement ap-
pended thereto a memorandum in the following words: "All rail to
the Missouri river; during navigation, on Missouri river.   No river risk
on the part of the contractor for unavoidable accidents.   Land haul
only when ground is frozen."  In pursuance of this contract P. received
certain goods, which were loaded on a steamer and were being trans-
ported up the Missouri river to the point of destination when the
steamer took fire and was burned, and the cargo, including the goods,
was totally destroyed.   *Held,* that P. was not liable for the loss.

*Appeal from Third District, Lewis and Clarke County.*

ACTION to recover for a loss in the negligent transportation
of government supplies.    Judgment for defendant.   Plaintiff
appealed.

ROBERT B. SMITH, United States District Attorney, for the
appellant.

B. P. CARPENTER, for the respondent.

McLEARY, J.   The facts of this case may be briefly sum-
marized as follows: On the 28th day of April, 1883, Thomas
C. Power entered into a contract with the United States,
through H. Price, commissioner of Indian affairs, to trans-
port certain supplies from Bismarck, Dakota, and other
eastern cities to points within the territory of Montana,
during the fiscal year ending the 30th of June, 1884.   The
contract was in the usual form of government transporta-
tion contracts, except that there was noted on the tabular
statement appended thereto a memorandum in the following
words: "All rail to Missouri river; during navigation, on
Missouri river.   *No river risk on the part of the contractor*
for *unavoidable accidents.*   Land haul only when ground is
frozen."

In pursuance of this contract, Power received from the United States, for transportation from Bismarck to certain points in Montana, certain goods, consisting of seventy-nine sacks of coffee, four hundred pairs of blankets, five hundred yards of cloth, one thousand pounds of lard, and two hundred men's caps, valued at $3,485.98; which goods were loaded on the steamer Butte and were being transported up the Missouri river towards their destination, when, during the night on the 1st day of August, 1883, at a point above Fort Peck, the steamer took fire and was burned, and the cargo, including the goods being transported for the United States, was a total loss. The steamer Butte belonged to a stock company, of which Power was a stockholder to the amount of one-fourth or one-third of the stock; and the said company was not interested in any way in the contract sued upon. It is admitted that the goods were received for transportation as alleged; that they were worth $3,485.98; and were lost on the steamer Butte by fire, and never delivered to the officers of the United States at their places of destination. It is also conceded that Power was a private carrier only, and not a common carrier, and was liable, if at all, only under the terms of the contract and the general laws applicable to private carriers. It was further agreed "that the best care and precautions were used by the defendant and all of his agents and employees, and that defendant Power gave orders to use the very greatest degree of care and diligence," and that defendant was not personally present. Upon this state of facts the case was submitted to the court below without a jury, and judgment rendered for the defendant. A motion for a new trial was made and overruled; and from the judgment and orders an appeal was taken to this court.

It is claimed by the attorney for the United States, that, on account of the memorandum attached to the contract, in the words " *no river risk on the part of the contractor for unavoidable accidents,*" the respondent became liable for the loss by fire; that such a risk was not a " *river risk* " or one

of the *perils of navigation,* which are synonymous terms; that this expression is equivalent to saying "*unavoidable accidents on account of river risks excepted;*" and that such unavoidable accidents as arose from *river risks* being alone excepted, all other unavoidable accidents were included; and that thus the respondent was liable for a loss by fire occurring on the river Missouri, although it was entirely unavoidable.

There is no pretense or claim that the respondent was a common carrier, or that the law governing common carriers applies to this case. He was only a private carrier and was to be governed by the law applicable to that class of persons, and was subject to all the liabilities of a private carrier. As a private carrier the respondent was bound to use ordinary care,— such care and diligence as a reasonably prudent man would exercise in the conduct of his own business, or in the preservation of his own property. Ang. Carr. § 47; Story, Bailm. § 399; 2 Greenl. Ev. § 219; *Ames* v. *Belden,* 17 Barb. 515; *Samms* v. *Stewart,* 20 Ohio, 73.

According to the statement of facts, it was admitted that respondent used the "best care and precautions." Then he would not be liable generally in this action. If, then, the appellants should recover a judgment herein, it would be on account of the terms of the contract which were made in this case. Do the terms of the memorandum quoted fix the liability of the respondent for the goods lost by the burning of the boat? The counsel for the appellants construes the terms, "No river risks for unavoidable accidents," to be a negative pregnant; and, on the maxim, "*expressio unius est exclusio alterius,*" to make the respondent liable for all other unavoidable accidents, except those which are classed in maritime law as "*river risks*" or "*perils of navigation.*" And authorities are cited to show that fire does not fall within that class of risks or perils. In order to maintain this construction, the terms of the memorandum are transposed and the words "river risks" are made to limit the words "unavoidable accidents," instead of the converse, as it is ex-

pressed by the parties in the contract itself. All persons are presumed to use language in its ordinary signification and to express themselves according to grammatical and logical rules. No fair rule of grammatical construction or legal interpretation would permit such a transposition and exchange of the substantive and adjective clauses. We must take the words as we find them, and derive the intention of the parties, when it can be done, from the exact language used by the parties themselves. To do this, we must, as far as possible, assume their surroundings and circumstances. R. S. Mont. 1st div. § 614, p. 154; *Donnell* v. *Humphreys*, 1 Mont. 526; *Taylor* v. *Holter*, id. 694.

Independently of the memorandum quoted, what were the obligations of the contractor undertaking to transport these goods? Those of a private carrier only. As such he was not responsible for river risks arising from unavoidable accidents. Then, either this memorandum, appended to the tabular statement attached to his contract, did not enlarge this liability, or, if it was intended to make him assume any risks arising from unavoidable accidents, they were *land risks*. And this was probably the intention, inasmuch as the transportation routes covered railroads and wagon roads as well as water-ways; and, in another note, added just after the one quoted, it is provided that, between certain points, the contractor would make the "land hauls only when the ground is frozen." At any rate, by no fair rule of interpretation can the respondent be made liable for any river risks arising from unavoidable accidents. Then the only river risks for which he would be liable are such as arise from avoidable accidents. Was this fire one of those? Abstractly considered, it may well be said that there is no such thing as an accident; that every result has a cause, or, rather, numerous causes, which, acting together, produce the result. But the law, which is intended to regulate the practical affairs of life, does not indulge in these abstractions of philosophy, and, according to the evidence, this fire was, as far as the respondent is con-

cerned, an unavoidable accident, for which he would not be responsible.

But the appellant's counsel contends that this fire was not a "*river risk.*" That may be conceded, and if it is not a river risk it is not provided for at all in this memorandum or in this contract, and the law generally must be relied on to fix the liability of the respondent. Under this view, as has been already stated, he is only liable as a private carrier for ordinary care; while, according to the evidence in the record, he used "the best of care and precautions."

Then, under the general law applicable to carriers, and under the terms of his contract, in any way which it is possible to construe it, the respondent is not liable for the loss which occurred to the appellants by the burning of the steamer Butte. Such being the case, we find no error in the judgment of the court below and it is affirmed.

*Judgment affirmed.*

GALBRAITH, J., and BACH, J., concur.