### GIBSONBURG BANKING CO. v. WAKEMAN BANK CO.

**1. LIEN OF BANK IS CO-EXTENSIVE WITH RIGHT OF SET-OFF.**

The lien of a bank upon moneys deposited with it—involving the right of the bank to charge the overdue debt of its depositor against his deposit—is based upon the right of set-off and is coextensive with it.

**2. TITLE OF BANK TO MONEYS DEPOSITED.**

The indebtedness of a bank to its depositor that becomes subject to its right of lien or set-off must have arisen from the deposit of moneys or funds that belong to the depositor himself. As against the money of third parties obtained by, or intrusted to the care of a depositor, a bank has no higher right or better title than the depositor himself, in absence of fraud or gross negligence on the part of such third party, by which such bank has been induced to part with value, or change its position to its prejudice.

**3. DRAWING CHECK WITHOUT FUNDS—FRAUD.**

One who for value issues to another his check upon a bank, thereby represents that he has funds in such bank subject to such check; and, if he is aware that there are no funds in the bank subject to his check and conceals that fact from the drawee, he is guilty of false representations to and fraud upon such drawee.

**4. PRINCIPLES APPLIED—DRAFT FRAUDULENTLY OBTAINED.**

M. being insolvent, by false and fraudulent misrepresentations, induced the W. bank to send to the G. bank for credit to M. its draft in payment of a fraudulent check issued by M. to the G. bank for collection and deposit. The W.' bank discovered the fraud on the day the draft was sent and notified the G. bank of such fraud on the evening of that day and while the draft was yet unapplied and in the original envelope,—and at the same time demanded a return to it of said draft. Prior to such notice, and on the same evening, the G. bank had determined, at a meeting of its directors, to apply said draft on its overdue promissory note against M., by crediting said draft as a deposit to M.'s account, and itself making a check against such deposit. The G. bank refused to surrender said draft to the W. bank, but applied it the next morning upon M.'s overdue note in the manner previously determined upon. M. did not direct such application on his note: *Held,* That said draft, having been obtained by fraud, remained the property of the W. bank and M. had no ownership therein; that the G. bank did not part with value, or change its position on the faith of said draft, before notice of the fraud, and had no right to withhold said draft from the W. bank; and that the application by the G. bank of the proceeds of said draft upon its overdue note, was an unlawful conversion of said draft.

**5. RULE AS TO REVERSAL OF FINDINGS OF TRIAL JUDGE.**

The rules applicable to findings made by a trial judge, a jury being waived, are the same as those applicable to a finding by a jury; among which is the rule that it must be presumed that the existence of facts necessary to sustain the judgment was found by the court, if such facts were involved in the issue and the evidence may be found to fairly sustain such finding; and the further rule that to justify the reviewing court in the conclusion that such finding is against the weight of the evidence, it must appear so clearly opposed thereto as to indicate distinctly prejudice, blundering, perversity or improper influence producing such finding.

ERROR to the Court of Common Pleas of Sandusky county.

PARKER, J.

This cause was submitted to Judge Norris of the third circuit and myself at the December term of the circuit court of Sandusky county We gave the questions involved some examination and consideration. while together at Fremont, and, though not conferring upon it since, we have each had the aid of copies of the full and valuable briefs of counsel, and our independent investigations have brought us to the same conclusions.

I may also mention that I have availed myself of the learning and ability of Judge Haynes, of this circuit, and he concurs fully in the conclusions at which we have arrived.

In the absence of Judge Norris, I do not deem it expedient to discuss fully the questions involved, since in so doing I could do no more than indicate the line of authorities and the course of reasoning that have satisfied my own judgment, and I would, doubtless, omit authorities and weighty arguments that have operated upon the mind of Judge Norris and which should find a place in an opinion given on behalf of the court. I will venture, however, on my own account, to mention briefly certain considerations that have influenced me.

The essential facts that appear from the pleadings and the evidence (all of which evidence is brought up by bill of exceptions), are as follows:

The Wakeman Bank Company, plaintiff below, operated a bank at Wakeman, Ohio. The Gibsonburg Banking Company, defendant below, operated a bank at Gibsonburg, Ohio. In July, 1897, W. H. Masterman, a director in the Gibsonburg bank, was insolvent—a condition known to the Gibsonburg bank but not known to the Wakeman bank. On July 19, Masterman drew his check for $1,000.00 against the Gibsonburg bank and

in favor of the Wakeman bank, and by his representation as to his purpose and resources, induced the latter to place the amount thereof to his credit on its books as a deposit. About the same time Masterman gave to the Gibsonburg bank his check for $1,000.00 in its favor against the Wakeman bank. This check was sent forward for collection, and on its receipt, the Wakeman bank, having full confidence in the integrity and financial responsibility of Masterman, and that the check for $1,000.00 on the Gibsonburg bank would be paid, issued and mailed to the Gibsonburg bank its draft on a New York bank for $999.00 which, with $1.00 retained as commission or discount fee, made up the amount of the check which it was designed to pay. At this time, Masterman had no money on deposit in either bank, except as he had obtained said credit of $1,000.00 at the Wakeman bank, on the faith and credit of his representations and his said check for $1,000.00 against the Gibsonburg bank.

Later on the same day that the Wakeman bank sent forward said draft, its cashier received information that disclosed to him that Masterman was practicing deception and fraud in this business, and he at once went to Gibsonburg and made known to the officials of the Gibsonburg bank the fraudulent practices of Masterman, by which he had obtained said credit, and in consequence of which said draft had been sent forward in payment of said check given by Masterman to the Gibsonburg bank; and demanded the surrender of the draft to him, at the same time tendering back Masterman's check. At this time Masterman was indebted to the Gibsonburg bank about $2,400, on an overdue note. Before the arrival of the cashier of the Wakeman bank the directors of the Gibsonburg bank had adopted a resolution directing their cashier to place the amount of this draft to the credit of Masterman, but the draft yet remained in the envelope in which it had been received, and no entry was made with respect thereto on the account of Masterman until the day following that upon which the information given and demand made as before mentioned by the cashier of the Wakeman bank. The purpose of the Gibsonburg bank, discussed and agreed upon at this meeting, but not put in the form of a resolution, was to take all the necessary measures to have this $999.00 applied on Masterman's overdue note, and this application thereof was subsequently made.

Other like fraudulent transactions on the part of Masterman had been therefore carried on against the Wakeman bank, but the fraudulent character thereof was not known by the Wakeman bank previously to the issue of this draft, but became known to it, and was by its cashier made known to the officers of the Gibsonburg bank at the time of his said visit to said bank. These need not be set forth in detail.

The Wakeman Bank Company having demanded of the Gibsonburg Banking Company a surrender of said draft, which was refused, brought suit to recover the value thereof, and a jury having been waived, the court found on the issues in its favor and gave judgment accordingly. To this finding and judgment error is prosecuted herein.

Certain of the facts as above stated are controverted by the pleadings and in the evidence, and counsel for plaintiff in error strenuously contend for a construction of the evidence that would warrant a finding of facts more favorable to the plaintiff in error; but it should be borne in mind that while this case is here for review on error, and the evidence submitted to the court below is brought into the record, and the facts of the

case that are controverted by the pleadings are to be ascertained from the evidence, yet in this proceeding we have not the same liberty of action in the consideration of the evidence as was possessed by the judge of the court of common pleas, who, upon a jury being waived, sat in its stead as the trier of the facts; our authority is limited by certain well established rules as well applicable to findings made by a judge under such circumstances as those made by a jury, among which is the rule that it must be presumed that the existence of any fact necessary to sustain the judgment was found by the court, if the question of the existence of such fact was involved in the issues, and the evidence (where, as in this case, it is brought into the record) may be found by fair construction to sustain such finding; and the further rule that to justify a reviewing court in the conclusion that such finding is against the weight of the evidence, it must appear to be so clearly opposed thereto as to indicate distinctly prejudice, blundering, perversity, or improper influences operating upon the mind of the trier of the fact to produce a wrong conclusion.

Applying the rule first stated, and assuming that it was necessary to so find, we conclude that the trial judge did find :

First, that the defendant in error was deceived by the fraudulent practices of Masterman, amounting to false representations of facts, and was thereby induced to issue and transmit to plaintiff in error the draft of the New York bank for $1,000.00.

Second, that the plaintiff in error, before it had parted with anything, of value, or had credited this draft to Masterman on account, or given him credit therefor on his note, or had done anything whereby it had so altered its position as to become bound to Masterman to account for the proceeds of this draft if surrendered by it to defendant in error, was fully advised of these fraudulent proceedings on the part of Masterman, and was advised that defendant in error desired and demanded the return to it of this draft.

Third, that in its subsequent action in endeavoring to obtain satisfaction of or security for its just demand from Masterman, defendant in error did not intend to, and in fact did not, withdraw or forego its demand and right to have this draft, or its value, returned to it by plaintiff in error.

Without invoking or applying the second rule above stated, we hold that these conclusions of fact are fairly supported by the evidence.

Premising these facts, it seems to us that the plainest principles of justice and equity required the plaintiff in error to comply with the demand of defendant in error by surrendering the draft, and that having declined to do so, but having converted the same, it should be bound to render its value. And we believe that there is no rule of law standing in opposition to these principles, but that, on the other hand, the law is in harmony therewith.

" The lien of the bank upon moneys deposited with it—the right of the bank to charge the overdue debts of its depositor against his deposit —is based upon the right of set-off, and is coextensive with it. * * * as against third parties, the indebtedness of the bank that becomes subject to this right of lien must have arisen from the deposit of moneys or funds that belonged to the depositor himself. He cannot by depositing moneys of others entrusted to his care, pay his debt to the bank or enable the bank to do so. In the absence of fraud or gross negligence on

the part of third parties, the bank has no higher right or better title to these moneys entrusted to his deposit than the depositor himself." Farmers and Merchants Bank v. Farwell, 58 Fed., R. 633, opinion of Sanborn, circuit judge.

The lien is based on the right of set-off, see Bank v. Brewing Co., 50 Ohio St., 159.

One who for value issues to another his check upon a bank, thereby represents that he has funds in such bank subject to such check ; and if he is aware that there are no funds in the bank subject thereto, and conceals that fact from the drawee, he is guilty of false representation to and fraud upon such drawee. Flaig v. Sleet, 43 O. S., 53; Merchants Bank v. State Bank, 10 Wall., 604.

This draft having been procured by the fraud of Masterman, was the property of the Wakeman Bank Company, and it had a right to its return as against Masterman, or the Gibsonburg Banking Company, which had notice of the fraud before it parted with anything of value for the draft, or had so changed its position as to be prejudiced by a surrender of the draft to the Wakeman Bank Company. Having appropriated the draft after notice of the claims of the true owner it is liable for the value thereof. Peter Adams Co. v. Shoe & Leather Co., 23 Abb. N. C., 172; Morrill & James v. Raymond, 28 Kan., 415; First National Bank v. King, 57 Pa. St., 213 ; Farmers and Merchants National Bank v. King, 57 Pa. St., 202.

To the state of facts which we hold, as above stated, may be fairly deduced from the record, and which forms the basis of our conclusion, the law laid down in Hatch v. National Bank, 147 N. Y. 148, is not applicable, since there the bank in good faith applied the proceeds of the check in question to the indebtedness to it of its depositor from whom it received the check, before it received any notice that the plaintiff had or claimed a right to such check or its proceeds.

The decision of Gordon v. Kearney, 17 Ohio, 592, is based upon the fact, found or assumed, that credit had been given or at least suffered to stand to the primary agent of the owner of the bill on the faith of the mutual dealing between the primary agent and the secondary agent ; and upon the proposition that where one of two innocent parties must suffer because of the wrongdoing of a third, the one who first put it within the power of the wrongdoer to accomplish the wrong must suffer the consequences. It is cited as authority in support of this principle in Mesick v. Roxborough, 1 Han., 348, 354; Cornwall v. Kinney, 1 Han., 496, 504 ; 6 Mont., 272. See also Reeves v. State Bank, 8 Ohio St., 466, 483, 484.

In the opinion, on page 576, this language occurs: " But for the credit by this means given to Warrick, Martin & Co., he (defendant) would probably have taken measures to secure the balance of account due to him," plainly implying that, though the draft had not been applied to the indebtedness of Warrick, Martin & Co., until after notice of plaintiff's claim, yet there was, in the opinion of the court, evidence in the record that precluded the court from finding or assuming that no change in the position of defendants had resulted from the transaction that would hinder his being placed in *statu quo* upon surrendering the bill. Whether this assumption was warranted by the facts, we need not inquire. The decision cannot be considered as authority upon a different state of facts than that found or assumed as its basis.

Banking Co. v. Bank Co.

We refer to Hatch v. National Bank and Gordon v. Kearney, *supra,* because relied upon by counsel for plaintiff in error. If it were bound or authorized to find the facts as claimed by such counsel, of course these cases would be authorities in support of their contention.

The judgment of the court of common pleas will be affirmed.

*Andrews Brothers,* for defendant in error.

*Lester Wilson* and *Hunt & DeRan,* for plaintiff in error.